## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ADELPHIA GATEWAY, LLC,** | : | **CIVIL ACTION NO. 1:21-CV-1241** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **PENNSYLVANIA ENVIRONMENTAL** | : | |
| **HEARING BOARD,** *et al.*, | : | |
| | : | |
| **Defendants** | : | |

## MEMORANDUM

Plaintiff Adelphia Gateway, LLC ("Adelphia"), filed a complaint against more than a dozen defendants seeking declaratory and injunctive relief pursuant to the Natural Gas Act, 15 U.S.C. § 717 *et seq.* Several of those defendants have filed a joint motion to dismiss Adelphia's complaint in its entirety for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), or in the alternative for failure to state a claim under Rule 12(b)(6). We will grant defendants' motion.

## I.   Factual Background & Procedural History

Adelphia is a natural gas company currently constructing an interstate natural gas pipeline as well as related facilities in Delaware and Pennsylvania. (See Doc. 1 ¶¶ 1-2, 38-39). One such facility is the Quakertown Compressor Station, located in West Rockhill Township, Pennsylvania. (See id. ¶¶ 3, 43, 59). In pursuit of this project, Adelphia sought a series of approvals from state and federal regulatory entities. (See id. ¶¶ 4-6). Adelphia applied for these approvals in early 2018 to the Federal Energy Regulatory Commission ("FERC") as well as the

Pennsylvania Department of Environmental Protection ("PADEP").  (See id. ¶¶ 39, 52-53).  PADEP issued Adelphia an Air Quality Plan Approval ("PADEP Plan Approval" or "Plan Approval") in April 2019 under the Clean Air Act, 42 U.S.C. § 7401 et seq.  (See Doc. 1 ¶¶ 5, 54-55; Doc. 1-3).  In December 2019, FERC issued an order formally approving Adelphia's pipeline project pursuant to its authority under the Natural Gas Act ("NGA"), 15 U.S.C. § 717f.  (See Doc. 1 ¶¶ 42, 51; Doc. 1-2).  FERC issued a Notice to Proceed in October 2020, naming the Quakertown Compressor Station as one of the approved facilities for construction.  (See Doc. 1 ¶¶ 4, 6; Doc. 1-4).

Several individual citizens and entities oppose Adelphia's project due to environmental concerns, and appealed both the FERC and PADEP decisions.  (See Doc. 1 ¶ 9).  Individual defendants Cliff Cole, Pamela West, Brian Weirback, Kathy Weirback, Todd Shelly, Christine Shelly, Daniel McCarthy, and Sheila McCarthy, (collectively, "individual defendants"), along with defendant West Rockhill Township, appealed the PADEP Plan Approval to the Pennsylvania Environmental Hearing Board ("EHB") in 2019.  (See id. ¶¶ 9, 29-33).  These same defendants also petitioned the Third Circuit Court of Appeals to review FERC's determination, and that appeal has been consolidated before the Court of Appeals for the District of Columbia Circuit.  (See id. ¶ 9).  In the meantime, PADEP extended the expiration date of its Plan Approval, and the individual defendants as well as West Rockhill Township also appealed PADEP's extension to the EHB.  (See id. ¶ 10).

In proceedings before the EHB on the PADEP Plan Approval, Adelphia filed a motion to dismiss on jurisdictional grounds, citing the NGA's judicial review

provision and arguing only the Third Circuit could hear appeals of the Plan

Approval.  (See id. ¶ 12; Doc. 1-5 at 2).  The NGA's judicial review provision states in

full:

> The United States Court of Appeals for the circuit in
> which a facility subject to section 717b of this title or
> section 717f of this title is proposed to be constructed,
> expanded, or operated shall have original and exclusive
> jurisdiction over any civil action for the review of an order
> or action of a Federal agency (other than the Commission)
> or State administrative agency acting pursuant to Federal
> law to issue, condition, or deny any permit, license,
> concurrence, or approval (hereinafter collectively
> referred to as "permit") required under Federal law,
> other than the Coastal Zone Management Act of 1972 (16
> U.S.C. 1451 *et seq.*).

15 U.S.C. § 717r(d)(1).  EHB agreed with Adelphia, dismissing the appeals.  (See

Doc. 1 ¶¶ 12-13; Doc. 1-5; Doc. 1-12).  West Rockhill Township and the individual

defendants then appealed EHB's dismissal to Pennsylvania's Commonwealth

Court.  (See Doc. 1 ¶ 14).  In June 2021, the Commonwealth Court reversed EHB's

dismissal, concluding EHB *did* have jurisdiction over the appeals of the PADEP

Plan Approval.  (See id. ¶ 15; Docs. 1-6, 1-7); see also Cole v. Pa. Dep't of Env't Prot.,

257 A.3d 805, 813-21 (Pa. Commw. Ct. 2021).  In particular, the Commonwealth

Court held that a proceeding before the EHB does not constitute a "civil action"

under the NGA's judicial review provision, and the NGA therefore does not

preempt EHB's administrative review of PADEP permitting decisions.  See Cole,

257 A.3d at 821.

     In July 2021, Adelphia filed the instant suit against the individual defendants,

West Rockhill Township, and added the EHB and four EHB judges as defendants to

the complaint (collectively, "EHB defendants").  Adelphia seeks declaratory and injunctive relief: Counts I and II seek declarations that Section 717r(d)(1) of the NGA vests the Third Circuit with original and exclusive jurisdiction to review appeals of the PADEP Plan Approval and extensions thereof, and that the NGA preempts any EHB jurisdiction to hear appeals of the Plan Approval or extension. Count III requests both preliminary and permanent injunctions against all defendants, preventing EHB or its judges from taking any action on the PADEP Plan Approval and extension, and preventing individual defendants and West Rockhill Township from seeking further relief from EHB.  Adelphia further filed an emergency motion for a preliminary injunction to prevent EHB from maintaining jurisdiction over the PADEP Plan Approval.  Eight days after Adelphia filed its complaint, PADEP successfully moved to intervene on behalf of Adelphia.

Individual defendants and West Rockhill Township filed a joint motion to dismiss the complaint, either for lack of subject matter jurisdiction or failure to state a claim.[1]  Following briefing on the motion, the court held oral argument in September 2021.  The EHB and EHB defendants did not sign on with any party on the motion to dismiss, file a brief, or participate in oral argument.  The motion is now fully briefed and ripe for disposition.

---

[1] Adelphia's complaint included individual defendants Daniel McCarthy and Sheila McCarthy.  (See Doc. 1 at 3, ¶ 33).  Daniel McCarthy and Sheila McCarthy joined the motion to dismiss.  (See Doc. 32 at 1).  However, Adelphia voluntarily dismissed Daniel McCarthy and Sheila McCarthy on October 14, 2021.  (See Doc. 45).

## II.   Legal Standards

### A.   Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) provides that a court may dismiss a claim for lack of subject matter jurisdiction.  See FED. R. CIV. P. 12(b)(1).  Such jurisdictional challenges take one of two forms: (1) parties may levy a "factual" attack, arguing that one or more of the pleading's factual allegations are untrue, removing the action from the court's jurisdictional ken; or (2) they may assert a "facial" challenge, which assumes the veracity of the complaint's allegations but nonetheless argues that a claim is not within the court's jurisdiction.  Lincoln Benefit Life Co. v. AEI Life, LLC, 800 F.3d 99, 105 (3d Cir. 2015) (quoting CNA v. United States, 535 F.3d 132, 139 (3d Cir. 2008)).  In either instance, it is the plaintiff's burden to establish jurisdiction.  See Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977).  Courts may grant a Rule 12(b)(1) motion based on the legal insufficiency of a claim only when it appears with certainty that assertion of jurisdiction would be improper.  See Gould Elecs. Inc. v. United States, 220 F.3d 169, 178 (3d Cir. 2000).

### B.   Rule 12(b)(6)

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6).  When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  Phillips v. County

of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)).  In addition to reviewing the facts contained in the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, [and] undisputedly authentic documents if the complainant's claims are based upon these documents."  Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

Federal notice and pleading rules require the complaint to provide "the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Phillips, 515 F.3d at 232 (alteration in original) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  To test the sufficiency of the complaint, the court conducts a three-step inquiry.  See Santiago v. Warminster Township, 629 F.3d 121, 130-31 (3d Cir. 2010).  In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'"  Id. at 130 (alteration in original) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)).  Next, the factual and legal elements of a claim must be separated; well-pleaded facts are accepted as true, while mere legal conclusions may be disregarded.  Id. at 131-32; see Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).  Once the court isolates the well-pleaded factual allegations, it must determine whether they are sufficient to show a "plausible claim for relief."  Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 556.  A claim is facially plausible when the plaintiff pleads facts "that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678.

III.   **Discussion**

Adelphia invokes this court's federal question jurisdiction under 28 U.S.C.

§ 1331.  (<u>See</u> Doc. 1 ¶ 34).  Individual and township defendants do not directly attack

this jurisdictional allegation, but claim a bevy of legal doctrines warrant the

dismissal of Adelphia's complaint.  Moving defendants argue (1) the court lacks

subject matter jurisdiction pursuant to the <u>Rooker-Feldman</u> doctrine, (2) the court

should abstain from exercising its jurisdiction pursuant to the <u>Colorado River</u>

doctrine, and (3) if the court finds it has subject matter jurisdiction, Adelphia's

complaint still fails to state a claim pursuant to Rule 12(b)(6) defenses of *res*

*judicata*, collateral estoppel, and laches.[2]  (<u>See</u> Doc. 32).  We find that <u>Rooker-

Feldman</u> does not preclude our jurisdiction.  We also find that the <u>Colorado</u> <u>River</u>

doctrine counsels in favor of abstention and that Adelphia is collaterally estopped

from relitigating the issue of EHB jurisdiction after unsuccessfully pressing its case

before the Commonwealth Court.

A.     **Subject Matter Jurisdiction**

1.     ***Rooker-Feldman* Doctrine**

Section 1257 of Title 28 of the United States Code grants the Supreme Court

of the United States sole authority to review state court decisions.  <u>See</u> 28 U.S.C.

---

[2] During oral argument, defense counsel indicated that the 12(b)(1) portion of their motion constituted a "factual attack" for the purposes of review.  Yet nothing in defendants' briefing challenges the facts set forth in Adelphia's complaint.  (<u>See</u> Docs. 37, 42).  Accordingly, we find that defendants' motion is a facial attack on Adelphia's complaint and will assume the veracity Adelphia's factual allegations, but disregard the complaint's legal conclusions.  See <u>Lincoln Benefit Life Co.</u>, 800 F.3d at 105; <u>Santiago</u>, 629 F.3d at 130-31.

§ 1257.  A federal district court has no appellate jurisdiction over the final

determinations of state courts.  See id.; Rooker v. Fid. Tr. Co., 263 U.S. 413, 416

(1923); D.C. Ct. of Appeals v. Feldman, 460 U.S. 462, 476 (1983).  The Rooker-

Feldman doctrine "prohibits the district court from exercising jurisdiction" when a

final state-court judgment precedes a federal suit.  Great W. Mining & Mineral Co.

v. Fox Rothschild LLP, 615 F.3d 159, 163-64 (3d Cir. 2010).  In recent years, the

Supreme Court has explained that the Rooker-Feldman doctrine is exceedingly

narrow.  See Lance v. Dennis, 546 U.S. 459, 464 (2006).  The court is thus mindful

that we must not apply the doctrine "beyond the contours of the Rooker and

Feldman cases."  See Turner v. Crawford Square Apartments III, L.P., 449 F.3d 542,

547 (3d Cir. 2006) (quoting Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S.

280, 282-84 (2005)).  When determining whether a complaint merits dismissal

pursuant to the Rooker-Feldman doctrine, the court considers whether the

allegations of injury are "(1) brought by state-court losers (2) complaining of injuries

caused by state-court judgments (3) rendered before the district court proceedings

commenced and (4) inviting district court review and rejection of those

judgments."  Malhan v. Sec'y U.S. Dep't of State, 938 F.3d 453, 458 (3d Cir. 2019)

(quoting Exxon Mobil, 544 U.S. at 284).

Relevant here, the Rooker-Feldman doctrine only applies when the losing

party seeks federal relief "after the state proceedings [have] ended."  See Exxon

Mobil, 544 U.S. at 291.  Our court of appeals recently adopted the "practical finality"

approach for Rooker-Feldman analysis, holding that the doctrine "does not apply

when state proceedings have neither ended nor led to orders reviewable by the

8

United States Supreme Court."  See Malhan, 938 F.3d at 460; see also Taggart
v. Saltz, 855 F. App'x 812, 814 (3d Cir. 2021) (nonprecedential) (doctrine inapplicable
because federal plaintiff's complaint was filed "while his petition for allowance of
appeal was pending in state court").

　　　We readily conclude that Rooker-Feldman is inapplicable to the instant
matter.  Although Adelphia requests declaratory relief that appears diametrically
opposed to the conclusions of the Commonwealth Court decision, Adelphia and
PADEP have filed petitions for allowance of appeal with the Supreme Court of
Pennsylvania.  (See Docs. 38-1, 38-2, 38-3, 38-4).  As of this date, those appeals
remain pending.  See, e.g., Allocatur Docket Sheet No. 312 EAL 2021, SUPREME CT.
OF PA., https://ujsportal.pacourts.us/Report/PacDocketSheet?docketNumber
=312%20EAL%202021&dnh=W%2Bh%2BUYr3imBC2AfwHv82lQ%3D%3D (last
visited Nov. 22, 2021).  Because state-court proceedings have not concluded, the
Rooker-Feldman doctrine does not deprive this court of subject matter jurisdiction.
See Malhan, 938 F.3d at 460; Taggart, 855 F. App'x at 814.

　　　**2.** 　 ***Colorado-River* Abstention**

　　　The Colorado River doctrine permits courts to abstain from exercising
jurisdiction by staying or dismissing a pending federal action in favor of a parallel
state court proceeding.  Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc.,
571 F.3d 299, 307 (3d Cir. 2009) (citing Colorado River Water Conservation District v.
United States, 424 U.S. 800 (1976)).  The court must apply the doctrine cautiously,
mindful that abstention is an "extraordinary and narrow exception" to our
"virtually unflagging obligation" to exercise jurisdiction when conferred by

Congress.  See id. (quoting Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 716 (1996)).  The abstention analysis comprises a two-part inquiry: the court must decide first whether the actions are indeed "parallel" and, second, whether the matters present the "extraordinary circumstances" contemplated by Colorado River and its progeny.  See Nationwide, 571 F.3d at 307 (citing Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 23-27 (1983); Colorado River, 424 U.S. at 818-19).

Generally, proceedings are "parallel" when they involve "substantially similar parties and claims at the time the federal court is deciding whether to abstain."  See Kelly v. Maxum Specialty Ins. Grp., 868 F.3d 274, 285 (3d Cir. 2017); Nationwide, 571 F.3d at 307.  The state and federal litigation must be "truly duplicative"—that is, "identical, or at least effectively the same."  See Kelly, 868 F.3d at 285 (citation omitted).  If parallelism exists, the court weighs six factors to determine whether the circumstances are sufficiently extraordinary to warrant abstention: (1) in an *in rem* case, which court first assumed jurisdiction over the property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which the courts obtained jurisdiction; (5) whether federal law or state law controls the decision; and (6) whether the state court will adequately protect the interests of the parties.  See Colorado River, 424 U.S. at 818-19; Moses H. Cone, 460 U.S. at 23-27.  The court must evaluate the factors through the prism of the Supreme Court's directive that the balance should be "heavily weighted in favor of the exercise of jurisdiction."  Moses H. Cone, 460 U.S. at 16.

10

Turning to parallelism between the state and federal actions, we observe that the instant matter involves the same parties as the state court case, save the addition here of the EHB and EHB defendants.  Adelphia makes much of EHB's presence, but we are not persuaded.  (See Doc. 38 at 9).  Courts may consider actions parallel when the parties are "*substantially* the same."  See Kelly, 868 F.3d at 285 (emphasis added).  EHB's absence from the Commonwealth Court proceeding is of no moment, as the parties were appealing a decision from that very same administrative body, as decided by the EHB defendants, to the state intermediate court.  Here too, the EHB and EHB defendants have explicitly taken no position on Adelphia's complaint or on the motion to dismiss.  (See Doc. 40).  We conclude the parties in this matter are substantially similar to those in the state court action.

We also find the federal and state court actions involve the same core legal issue.  The Commonwealth Court stated the issue before it as:

> . . . a pure question of law that implicates the subject matter jurisdiction of both the EHB and the United States Court of Appeals for the Third Circuit.  The question, simply stated, is whether Section 19(d)(1) of the federal [NGA], as amended in 2005, 15 U.S.C. § 717r(d)(1), divests the EHB of its subject matter jurisdiction to hear Petitioners' appeal from DEP's approval of the Quakertown Compressor Station.

See Cole, 257 A.3d at 808.  Adelphia's briefing to the Pennsylvania Supreme Court retraces this same issue, requesting that the state's high court "determine for the first time whether the NGA preempts the EHB from taking action under the Environmental Hearing Board Act . . . in connection with Adelphia's FERC-

regulated interstate pipeline project." (See Doc. 38-1 at 15). Adelphia also relays a question presented as whether the Commonwealth Court erred by "determining that the federal [NGA] does not preempt the EHB from reviewing the [PADEP]'s permits." (See id. at 7).

In its federal complaint, Adelphia hews to almost identical language, seeking a declaration that "pursuant to the NGA, the Third Circuit has original and exclusive jurisdiction to review any appeal of the Plan Approval issued by the PADEP." (See Doc. 1 ¶ 91). Adelphia further seeks a declaration that "federal law preempts any authority or jurisdiction of the EHB to take any further action in connection with the Plan Approval issued by the PADEP," because the Pennsylvania Environmental Hearing Board Act "is not included in the narrow exceptions [to the NGA judicial review provision]." (See id. ¶¶ 95-96, 103). Adelphia's argument in the matter *sub judice* that the two actions "raise different issues" is belied by its own briefing before the state court. We conclude that the federal and state proceedings are parallel for the purposes of Colorado River abstention. See Kelly, 868 F.3d at 285; Nationwide, 571 F.3d at 307.

Having found the proceedings are parallel, we must analyze the factors identified by the Supreme Court to determine whether the circumstances are sufficiently extraordinary to warrant abstention. See Colorado River, 424 U.S. at 818-19; Moses H. Cone, 460 U.S. at 23-27. We agree with Adelphia that the first and second factors are not relevant here. (See Doc. 38 at 10 n.4). The first factor is inapplicable because no property is at issue. See Moses H. Cone, 460 U.S. at 19. We likewise accord the second factor no weight because both the EHB and this court

are situated in Harrisburg, Pennsylvania, and Adelphia's petitions for appeal were both filed in the Pennsylvania Supreme Court's Middle District.  (See Docs. 1-5, 38-1, 38-2).

The third and fourth factors both counsel in favor of abstention.  The third factor, desirability of avoiding piecemeal litigation, applies when there is "a strongly articulated *congressional policy* against piecemeal litigation in the specific context of the case under review."  See Ryan v. Johnson, 115 F.3d 193, 198 (3d Cir. 1997) (citation omitted).  Adelphia remonstrates that this factor weighs against abstention, yet the NGA provision on which Adelphia bases its suit vests "original and exclusive jurisdiction" in federal *appellate* courts, not here.  See 15 U.S.C. § 717r(d)(1).  Congressional policy of the NGA thus eliminates our role entirely from judicial review of interstate pipeline permits.  See Ryan, 115 F.3d at 198.  Exercising our jurisdiction to declare the subject matter jurisdiction of our own appellate court therefore risks "creat[ing] confusion over the parties' rights and obligations," particularly where "the state court has already considered—and rejected— [Adelphia]'s [] claims."  See Chambers v. Wells Fargo Bank, N.A., 726 F. App'x 886, 889 (3d Cir. 2018) (nonprecedential).  Furthermore, Adelphia's complaint requests that we effectively abrogate the Commonwealth Court's 2021 decision.  (See Doc. 1 ¶¶ 84, 88, 89, 94, 100, 101).  Should the Pennsylvania Supreme Court grant Adelphia's petition for review, its legal conclusion on the NGA's judicial review provision could conflict with our own decision on the merits of Adelphia's complaint.  Given the plain language of the NGA and the unique procedural posture of this matter, the third factor favors abstention.

So too for the fourth factor, which examines the order in which courts obtained jurisdiction.  We are mindful that the court must consider "comparative progress made" in the parallel proceedings.  See Nationwide, 571 F.3d at 309. Pennsylvania's administrative and court adjudicative bodies have made considerably more progress, as the parties now before us have been litigating the propriety of EHB jurisdiction over PADEP's Plan Approval for more than two years.  (See Doc. 1 ¶¶ 9-10, 12-15).

The fifth factor in our Colorado River analysis, whether state or federal law controls, weighs against abstention.  Despite defendants' contention that EHB's jurisdiction initially implicates Pennsylvania law, neither party disputes that interpretation of a federal statute—the NGA—lies at the heart of this matter.  See Ryan, 115 F.3d at 199 (noting the "presence of federal issues militates against abstention").  The sixth and final factor considers the adequacy of the state court to "protect the interests of the parties."  See id. at 200 (citing Moses H. Cone, 460 U.S. at 26-27 (sixth factor weighs against abstention when unclear whether "state court had the power to grant" requested relief)).  When state court proceedings are adequate, this factor "carries little weight."  Id.  Although Adelphia now protests that Pennsylvania courts will not adequately protect its interests, it never questioned—and indeed, reaffirmed—that the Commonwealth Court could exercise its jurisdiction to decide in Adelphia's favor.  See Cole, 257 A.3d at 821 n.22 (noting parties' agreement that intermediate court had power to decide subject matter jurisdiction of EHB).  We thus accord this factor slight weight in favor of abstention.

14

Given the parallel nature of the state and federal proceedings, as well as the balance of the six factors, we conclude that abstention is warranted pursuant to the <u>Colorado River</u> doctrine.  In the exercise of caution, however, we will consider the defendants' motion to the extent it is based on Rule 12(b)(6).

### B.    Failure to State a Claim

Defendants partially premise their motion on Rule 12(b)(6), arguing that Adelphia's complaint is "barred by *res judicata*, collateral estoppel, and laches." (<u>See</u> Doc. 32 at 2).  We find the application of collateral estoppel dispositive, and therefore do not reach defendants' arguments regarding *res judicata* or laches.

The doctrine of collateral estoppel, or issue preclusion, dictates that "a question or fact distinctly put in issue and directly determined by a court of competent jurisdiction . . . cannot be disputed in a subsequent suit between the same parties or their privies."  <u>Montana v. United States</u>, 440 U.S. 147, 153 (1979). Collateral estoppel specifically bars relitigation of an issue that was conclusively determined in a prior adjudication and that was essential to the original judgment. <u>See</u> <u>Witkowski v. Welch</u>, 173 F.3d 192, 198 (3d Cir. 1999); <u>Venuto v. Witco Corp.</u>, 117 F.3d 754, 758 (3d Cir. 1997).  Collateral estoppel promotes fairness and certainty, while preventing wasteful expenditure of resources on issues already resolved through adversarial proceedings.  <u>See</u> <u>Allen v. McCurry</u>, 449 U.S. 90, 94 (1980); <u>Montana</u>, 440 U.S. at 153-54; <u>Witkowski</u>, 173 F.3d at 198-99.  The party invoking collateral estoppel bears the burden of establishing its application, <u>see</u> <u>Commonwealth v. Buffington</u>, 828 A.2d 1024, 1033 (Pa. 2003) (citation omitted), and may raise the defense in a motion to dismiss, <u>see</u> <u>M & M Stone Co. v. Pennsylvania</u>,

388 F. App'x 156, 162 (3d Cir. 2010) (nonprecedential) (citing Connelly Found. v. Sch. Dist. of Haverford Twp., 461 F.2d 495, 496 (3d Cir. 1972)).

A federal court analyzing the preclusive effect of a Pennsylvania state-court judgment must look to Pennsylvania preclusion law.  See Witkowski, 173 F.3d at 199; Sec'y U.S. Dep't of Lab. v. Kwasny, 853 F.3d 87, 94 (3d Cir. 2017) (citation omitted).  Pennsylvania courts apply a four-part test derived from Section 27 of the Restatement (Second) of Judgments to determine whether collateral estoppel bars relitigation of an issue.[3]  See Witkowski, 173 F.3d at 199 (citing Pa. State Univ. v. County of Centre, 615 A.2d 303, 306 (Pa. 1992)); see also RESTATEMENT (SECOND) OF JUDGMENTS § 27 (AM. L. INST. 1982).  An issue will be precluded if (1) the issue decided in the prior adjudication is identical to the issue presented in the later action, (2) there was a final judgment on the merits, (3) the party against whom collateral estoppel is asserted was a party to or in privity with the party to the prior adjudication, and (4) the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the applicable issue in the prior adjudication.

---

[3] Pennsylvania courts occasionally employ a fifth element: "that resolution of the issue in the prior proceeding was essential to the judgment."  See In re Coatesville Area Sch. Dist., 244 A.3d 373, 379 (Pa. 2021) (citation omitted).  Neither party briefed or acknowledged the applicability of this sometimes-present fifth element under Pennsylvania law.  (See Doc. 37 at 19-20; Doc. 38 at 13-17; Doc. 42 at 7-9).  Furthermore, the Commonwealth Court decision considered the singular legal issue of EHB jurisdiction *vis à vis* the NGA.  See Cole, 257 A.3d at 808.  It logically follows that resolution of this issue was essential to the Commonwealth Court's judgment.  The court will therefore apply the four-prong test to the instant matter. See Kelly v. Wells Fargo Bank, N.A., No. 1:13-CV-2298, 2015 WL 1333264, at *7 (M.D. Pa. Mar. 25, 2015) (Conner, C.J.) (acknowledging same discrepancy in state court precedent).

Witkowski, 173 F.3d at 199 (citing state court decisions).  Adelphia contests the first, second, and fourth elements, which we will address *seriatim*.  (See Doc. 38 at 13-14).

### 1.   *Identical Issues*

Collateral estoppel applies to prevent relitigation of "the ultimate and controlling issues" that were already decided in a previous proceeding.  See Witkowski, 173 F.3d at 201 (quoting Helmig v. Rockwell Mfg. Co., 131 A.2d 622, 627 (Pa. 1957)).  It may apply to both legal and factual issues.  See Dici v. Pennsylvania, 91 F.3d 542, 550 (3d Cir. 1996) (citing Hebden v. W.C.A.B. (Bethenergy Mines, Inc.), 632 A.2d 1302, 1304 (Pa. 1993); RESTATEMENT (SECOND) OF JUDGMENTS § 27 cmt. c). When the issues are identical, a difference in the party's requested relief from one proceeding to another does not prevent a court from applying collateral estoppel. See Balsbaugh v. Zeck *ex rel.* McQuate, 500 A.2d 208, 210 (Pa. Commw. Ct. 1985) (collecting cases).

We have already decided *supra*, in the context of Colorado River abstention, that the state court proceedings and resulting Commonwealth Court decision resolved the very same issue Adelphia now asks us to adjudicate.  We reject Adelphia's argument that collateral estoppel cannot apply because Adelphia now seeks a declaration regarding both the PADEP Plan Approval and extensions thereof.  (See Doc. 38 at 13-14).  Adelphia provides no reason why the "pure legal question" decided by the Commonwealth Court would not apply with equal force to both the original PADEP Plan Approval and any extensions for the Quakertown Compressor Station, assuming the parties appealing the extension timely invoked EHB review.  See Cole, 257 A.3d at 821 (noting defendants desired EHB review of

PADEP Plan Approval and "invoked it timely"). We find that the state and federal actions contemplate identical legal issues for the purposes of collateral estoppel.

### 2.    *Final Judgment on the Merits*

Pennsylvania courts analyzing collateral estoppel consider a judgment final "unless or until it is reversed on appeal." See Shaffer v. Smith, 673 A.2d 872, 874 (Pa. 1996); see also Humphreys v. McCabe Weisberg & Conway, P.C., 686 F. App'x 95, 97 (3d Cir. 2017) (nonprecedential) ("pending state-court appeal" did not negate finality of judgment). So long as the judgment is "sufficiently firm to be accorded preclusive effect," it is final for the purposes of collateral estoppel. See Greenway Ctr., Inc. v. Essex Ins. Co., 475 F.3d 139, 148 (3d Cir. 2007) (quoting Shaffer, 673 A.2d at 875 (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 13)); but see Safeguard Mut. Ins. Co. v. Williams, 345 A.2d 664, 669 (Pa. 1975) (denial of injunctive relief, without accompanying opinion, did not constitute judgment "on the merits").

We conclude that the Commonwealth Court's opinion constitutes a "final judgment" unless and until the Pennsylvania Supreme Court elects to reverse it. See Shaffer, 673 A.2d at 874. In contrast to our Rooker-Feldman analysis, *supra* pp. 8-9, the pending petitions for review have no effect on whether the Commonwealth Court's judgment is preclusive. See Humphreys, 686 F. App'x at 97. The decision is therefore "sufficiently firm" for purposes of collateral estoppel. See Greenway, 475 F.3d at 148.

### 3.    *Full & Fair Opportunity to Litigate*

To be accorded preclusive effect, the prior state proceeding also must have allowed the parties a full and fair opportunity to litigate the relevant issue. See

<u>Witkowski</u>, 173 F.3d at 205 (citation omitted).  A party receives such an opportunity so long as the previous litigation's procedures did not fall "below the minimum requirements of due process as defined by federal law."  <u>See</u> <u>Metro. Edison Co. v. Pa. Pub. Util. Comm'n</u>, 767 F.3d 335, 351 n.22 (3d Cir. 2014) (citing <u>Bradley v. Pittsburgh Bd. of Educ.</u>, 913. F.2d 1064, 1074 (3d Cir. 1990)); <u>but see</u> <u>Safeguard</u>, 345 A.2d at 669 (limited nature of parties' participation as intervenors in earlier proceeding meant they did not receive full and fair opportunity to litigate).  In rare cases, if a party lacked "incentive" to fully litigate the prior action due to a small claim amount or "fast and informal procedures," the party may not have received a full and fair opportunity in the prior action.  <u>See</u> <u>Rue v. K-Mart Corp.</u>, 713 A.2d 82, 86 (Pa. 1998) (citing RESTATEMENT (SECOND) OF JUDGMENTS § 28).

We find Adelphia's argument on this factor, *viz.*—that the Commonwealth Court failed to "fully address" NGA preemption—wholly without merit.  (<u>See</u> Doc. 38 at 14).  Initially, Adelphia provides no case law to support its contention that the Commonwealth Court's failure to respond to its preemption briefing means Adelphia's opportunity to litigate was hampered.  Indeed, the <u>Cole</u> opinion weaves preemption concepts throughout its analysis, and simply disagrees with Adelphia and PADEP's legal conclusions.  <u>See</u> <u>Cole</u>, 257 A.3d at 813-21.  Furthermore, Adelphia provides no facts to indicate it lacked incentive to present a full-throated

defense in the Commonwealth Court, or that it was not accorded due process in that

forum.  See Metro. Edison Co., 767 F.3d at 351 n.22; Rue, 713 A.2d at 86.[4]

For these reasons, we find all elements for collateral estoppel are present.

Adelphia seeks to relitigate in this court the issue of EHB jurisdiction over PADEP's

approval of the Quakertown Compressor Station, following the Commonwealth

Court's valid and final judgment on this very same issue.  See generally Cole, 257

A.3d at 808.  Adelphia is prohibited from doing so under Pennsylvania preclusion

law.[5]

---

[4] To the extent Adelphia's contention could be based on its status as an intervenor in the state court action, the publicly available docket sheet for the Commonwealth Court proceeding indicates no such "limited participation" occurred here.  Cf. Safeguard, 345 A.2d at 669.  Adelphia intervened less than two weeks after the individual defendants filed a petition for review in the Commonwealth Court.  See Docket Sheet, No. 1577 CD 2019, COMMONWEALTH CT. OF PA. 6, https://ujsportal.pacourts.us/Report/PacDocketSheet?docketNumber=1577%20CD%202019&dnh=yvU20DFiHWzd%2FkZ3lLUMxw%3D%3D (last visited Nov. 19, 2021).  Furthermore, the Commonwealth Court granted Adelphia (1) an extension of time to file its brief, (2) a continuance of oral argument, (3) equal time at oral argument with PADEP, and (4) the chance to submit post-hearing supplemental briefing on the Commonwealth Court's jurisdiction to decide EHB's subject matter jurisdiction.  See id. at 6-12; see also Cole, 257 A.3d at 820 n.22.  Adelphia therefore had a full and fair opportunity to litigate EHB jurisdiction in the previous action, and simply failed to emerge victorious.

[5] We acknowledge, but reject, Adelphia's assertion that we should decline to apply collateral estoppel due to "the potential adverse impact of the determination on the public interest."  See Duvall v. Att'y Gen. of U.S., 436 F.3d 382, 391 (3d Cir. 2006) (citation omitted); (see also Doc. 38 at 15-17).  We do not consider a merits ruling by this court, duplicative of the Commonwealth Court's efforts on the subject matter jurisdictions of the EHB and our own appeals court, to fulfill the NGA's purpose of streamlining judicial review.  See Del. Riverkeeper Network v. Sec'y Pa. Dep't of Env't Prot., 833 F.3d 360, 372 (3d Cir. 2016).

**IV.**   <u>**Conclusion**</u>

We will grant defendants' motion (Doc. 32) to dismiss.  An appropriate order shall issue.


/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania


Dated:    November 23, 2021